**Marie D. HICKEY, Plaintiff,**

v.

**NEW CASTLE COUNTY OF the STATE OF DELAWARE et al., Defendants.**

**Civ. A. No. 76–262.**

United States District Court,
D. Delaware.

March 17, 1977.

---

E. Leigh Hunt, Wilmington, Del., for plaintiff.

Joseph M. Bernstein, New Castle County, Dept. of Law, Wilmington, Del., for New Castle County, Folsom, Uffelman and Harp.

Harvey B. Rubenstein, Wilmington, Del., for Deppe, Matthews, and Local 1607.

STAPLETON, District Judge:

This is an action pursuant to 42 U.S.C. § 1983 in which plaintiff Marie D. Hickey alleges that she was dismissed from her employment as a key punch operator for New Castle County without being afforded an adequate opportunity to be heard, in violation of her rights to procedural due process guaranteed by the Fourteenth Amendment.[1] Defendants are the County of New Castle of the State of Delaware, the County Executive, the former Director of Personnel for New Castle County, the Director of the County's Data Processing Center, the Union Local representing non-management New Castle County employees, the Local's Shop Steward, and the Local's President.

Plaintiff alleges that she was a member of the classified service of New Castle County, that she, therefore, had an expectation that she would continue to be employed by the County unless she gave the County cause for terminating her employment, and that such expectation of continued employment gave her a property interest, which could not constitutionally be taken away absent a hearing before an impartial decision maker. She alleges that the County and individual County defendants violated her rights to due process of law by summarily discharging her without providing her an opportunity to be heard.

---

1. The complaint also alleges a violation of 42 U.S.C. § 1981. At oral argument, however, plaintiff, through her attorney, conceded that there are no facts to support a claim of racial discrimination and, therefore, the Section 1981 allegations will be dismissed.

Plaintiff alleges the following facts concerning her discharge. On May 21, 1976, she received a letter from defendant Harp, Director of the New Castle County Data Processing Center, stating that she was terminated from employment with New Castle County, in large part because she was absent without leave. The final paragraph of the letter gave her forty-eight hours to respond in writing to the Director of Personnel if she so desired. Within that forty-eight hour period, plaintiff's husband, on her behalf, went to see defendant Folsom, New Castle County Executive, who told him after conversation with the New Castle County Personnel Director that plaintiff should return to work as soon as she recovered from surgery which she was to undergo. On July 2, 1976, defendant Uffelman informed plaintiff, through her attorney, that she had in fact been terminated on May 21, 1976. Within ten days of receipt of the July 2nd letter plaintiff sought to appeal her discharge to the Personnel Board. The Board refused to consider the merits of her appeal, holding that it had not been timely filed. The Board concluded that under the New Castle County Code plaintiff had ten days from the date of her discharge in which to appeal her employer's actions and that that ten day period began to run on May 21, 1976.

Plaintiff also sought to file a grievance through her Shop Steward immediately after receiving the July 2nd letter. After conferring with the President of the Union Local, the Shop Steward advised plaintiff that the Union would not file a grievance.

Plaintiff claims that the procedures utilized by the County in terminating her employment were constitutionally deficient in two respects. First, she contends that the termination procedures (Sections 12–101 and 12–171 of the New Castle County Code) are inadequate on their face because they do not provide for a hearing prior to discharge. Secondly, she argues, even assuming *arguendo* that the post-termination procedures ordinarily used by the County are constitutionally sufficient, she was denied the protection of even those procedures because she was led to believe that she had not in fact been discharged on May 21, 1976, and, therefore, did not file her appeal with the Personnel Board in what was deemed to be a timely fashion. Plaintiff further alleges that the Union defendants conspired among themselves and with the County defendants to deprive her of her constitutional rights to due process of law.

The County defendants have filed a motion for summary judgment and supporting affidavits, contending that plaintiff had no expectation of continued employment and, therefore, suffered no loss of a property interest when she was terminated, and that even if she did have a property interest protected by the Due Process Clause, the procedures offered by the County were adequate. Any failure to utilize the procedures in plaintiff's case, defendants contend, resulted from plaintiff's own failure to initiate proceedings in a timely fashion.

The Union defendants have also filed a motion to dismiss for failure to state a claim, arguing that the complaint does not allege that they acted under color of state law.

## I. COUNTY DEFENDANTS' MOTION TO DISMISS.

### A. *Property Interests.*

■ Defendants argue that under the New Castle County Code classified service employees have no expectation of continued employment. Rather, defendants contend, the Code simply provides that certain procedures will be followed prior to a classified employee's discharge. Such a statute according to the Supreme Court's recent decision in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), creates no property interest in the County's classified service employees. I disagree with defendants' construction of the dismissal provisions of the New Castle County Code.

Section 12–99 of the County Code provides that "Disciplinary action may be taken" for twenty-three specified reasons (including delinquency, inefficiency and incompetency, and other forms of misconduct)

"subject to appeal rights provided in . ." the Code.[2] Section 12–96 states that "dismissal of employees in the classified service shall be governed by Section 12–93".[3] That Section, in turn provides:

Dismissals are discharges or separations made for delinquency, misconduct, inefficiency or inability to perform the work of the position satisfactorily. All dismissals are made upon the recommendation of the appropriate department head through the director of personnel. No dismissal of a permanent employee shall take effect until a department head gives to such employee a written statement setting forth the reasons therefore and files a copy of such statement with the director of personnel. An employee who has been dismissed shall be paid for his accumulated vacation, but shall not be paid for accumulated sick leave and shall not have re-employment rights.

The most reasonable construction of these Code provisions is that the County Council intended to assure members of the classified service that their employment would not be terminated absent one of the specified causes for dismissal. Accordingly, I conclude that they create a legally enforceable state law right to continuing employment. While I have found no decision of the Delaware Supreme Court interpreting the County Code in this manner, a recent Delaware Superior Court decision lends substantial support to my conclusion. In *State v. Berenguer,* 321 A.2d 507 (Del.Super.1974) the court held that an individual who had been employed in a non-probationary status under the State's classified service personnel system and who was discharged without cause was entitled either to damages or back pay.[4] I have no doubt that the Supreme Court of Delaware would approve this construction of the State's Merit System of Personnel and place a similar construction on the County's classified service system. I, therefore, conclude that plaintiff here did have a legally enforceable expectation that she would continue in the employ of the County absent some action on her part which represented cause for her dismissal.[5] Plaintiff has a protected property interest which entitled her to the protections of the Due Process Clause upon her dismissal. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Anapol v. University of Delaware,* 412 F.Supp. 675 (D.Del.1976).

**2.** The Code appears to provide two alternative methods for employees to challenge their discharge. Section 12–101 sets forth a three step grievance procedure. The first step of that procedure is the presentation of the employee's grievance to the Department Director within ten working days after the challenged event or ten working days after the employee becomes aware of that event. The grievance may be presented to the Department Director with or without the assistance of the area steward. Step two of the grievance procedure requires that the Chairman of the Grievance Committee appeal an unsatisfactory decision by the Department Director to the chief administrative officer and Personnel Director. Under step 3 an unsatisfactory decision of the chief administrative officer and Personnel Director may be appealed through the Chairman of the Grievance Committee to the Personnel Board for a hearing.

Section 12–171 of the Code gives any employee who is dismissed or otherwise disciplined after completing his probationary period the right to appeal that disciplinary action to the Personnel Board for review. Both the appealing employee and the management official whose action is reviewed have the right to a public hearing at which they may present evidentiary facts. This Section does not expressly set a time period within which an appeal must be taken.

**3.** Section 12–171 makes it clear that dismissal is considered under the Code to be a form of discipline.

**4.** Section 5930 of the chapter outlining the State's classified service personnel system (29 Del.C. § 5930) provides:

The rules shall provide for discharge or reduction in rank or grade for cause after the probationary period for appointment or promotion is completed. The person to be discharged or reduced in rank for cause shall have the right of appeal as set forth in this chapter.

**5.** This case is thus distinguishable from *Bishop v. Wood, supra,* in which the applicable state law conferred no legally enforceable right to continued employment absent specified cause for discharge.

## II. ADEQUACIES OF PROCEDURES.

■ Defendants argue that even assuming *arguendo* due process attaches to plaintiff's interest in continued employment, as a matter of law the procedures provided by the County are adequate because plaintiff has no constitutional right to a hearing prior to her discharge. Defendants cannot be held liable, they argue, for plaintiff's failure to avail herself of these constitutionally adequate procedures.

The short answer to defendants' argument is this Court's holding in *Anapol v. University of Delaware, supra,* that a tenured employee, absent unusual circumstances, is entitled to a pre-termination opportunity to tell his or her side of the story. This conclusion was found in *Anapol* to be required by the Third Circuit Court of Appeals' decision in *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3rd Cir. 1974), vacated and remanded for a reconsideration of the attorneys' fees and immunity issues 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); vacated and remanded to the District Court for a reconsideration of these issues 538 F.2d 53 (3rd Cir. 1976), and I believe that decision remains a controlling precedent in this Circuit. While the Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) post dates the original *Skehan* opinion, I find the two cases wholly compatible. In *Mathews* the Supreme Court held that the Due Process Clause does not require an evidentiary hearing prior to the termination of Social Security disability payments, at least when there is an opportunity for such a prompt hearing after termination. The respondent in *Mathews* prior to the termination of his disability benefits, had been given a written notice of the reasons for the proposed termination, had been provided with a summary of the evidence which the agency considered most relevant and had been afforded an opportunity to submit written comment and additional evidence to the decision maker. The sole issue before the Court was whether due process also required a pre-termination trial-type hearing. The Court held that it did not based upon an analysis which weighed the following factors:

. . . [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e. g., *Goldberg v. Kelly,* supra, 397 U.S., at 263–271, 90 S.Ct., at 1018–1022.

Neither *Skehan* nor this case involves a procedure under which the person facing a termination is afforded a pre-deprivation notice of the type involved in *Mathews* and an opportunity to tell his side of the story in some way to the decision maker. Moreover, while the Court in *Skehan* did not have the benefit of the *Mathews* opinion, its analysis involved the same balancing process which the *Mathews* Court found to be required by *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and other pre-existing due process precedents.[6] Accordingly, I conclude that the *Mathews* case would not alter the view of the Third Circuit Court of Appeals as articulated in *Skehan.*[7]

---

6. While only the first two factors in the *Mathews* analysis are expressly mentioned in the *Skehan* opinion, I attribute the lack of reference to the additional administrative burdens imposed by the minimal procedural safeguards there required to a view that those burdens were not significant. The necessity of weighing the governmental interest in existing pre-deprivation procedures has been too long a part of Third Circuit jurisprudence to attribute any other significance to this silence. *See, e.* g., *Lebowitz v. Forbes Leasing and Finance Corporation,* 456 F.2d 979 (3rd Cir. 1972); *cert. denied,* 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972), *rehearing denied* 409 U.S. 1049, 93 S.Ct. 509, 34 L.Ed.2d 502 (1972); *Braxton v. Carlson,* 483 F.2d 933 (3rd Cir. 1973).

7. Other Courts of Appeal have found nothing in the *Mathews* case requiring a departure from the view expressed in the *Skehan* opinion. *E. g., Thurston v. Dekle,* 531 F.2d 1264 (5th Cir.

While *Skehan* dealt with the termination of a college professor and the instant case with a County employee, the conclusion reached under the *Mathews* and *Skehan* analysis must be the same.[8]

## III. THE UNION DEFENDANTS' MOTION TO DISMISS.

The Union defendants argue that the complaint does not state a cause of action under Section 1983 as to them because they are not alleged to have acted under color of state law. Plaintiff counters that where, as here, private individuals are alleged to have conspired with public officials to violate plaintiff's constitutional rights, those private individuals are considered to have acted under color of state law for the purposes of stating a claim under Section 1983.

 I agree with plaintiff that a private individual who conspires with public officials to violate one's constitutional rights will be considered to have acted under color of state law under Section 1983. *Adickes v. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). It is also true, however, that to tie any individual to a conspiracy more than vague conclusory allegations charging that individual with participation in the conspiracy are necessary to state a claim under Section 1983.[9]

Here the only allegation concerning the two Union official defendants, aside from the conclusory statement that they "conspired" with defendant County employees, are that they conversed with each other over the telephone when plaintiff tendered a grievance and that they failed to file a grievance. The complaint fails to allege any contact between the Union defendants and the County defendants and fails to state any facts from which one can infer any connection between the refusal to process a grievance and any understanding or objective which the County defendants may have had. In short, a reading of the complaint gives the Union officials no idea at all about the nature of plaintiff's conspiracy theory. Even under the liberal rules of notice pleading this is insufficient. Plaintiff will be given fifteen days from the date of the Court's Order to file an amended complaint which will remedy this deficiency. If plaintiff is unable to do so, the Union and the two Union officials will be dismissed from the case.

Submit order.

---

1976); *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361 (9th Cir. 1976).

**8.** Defendants also argued that the procedures provided for in the Code are constitutionally adequate as a matter of law because plaintiff's expectation of continued employment which gives rise to her property interest, is limited by the statutorily provided procedures. A majority of the court in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) rejected this approach, and I do not read the Supreme Court's recent decision in *Bishop v. Wood, supra*, to signal a departure by the majority from the conclusions they reached in *Arnett*. See also *Thurston v. Dekle, supra*.

**9.** *LaRouche v. City of New York*, 369 F.Supp. 565 (S.D.N.Y.1974); *cf. United States ex rel. Sabella v. Newsday*, 315 F.Supp. 333 (E.D.N.Y. 1970).