**Richard KNOTTS, Plaintiff,**

v.

**Richard D. BEWICK, in his official capacity as Acting Director of the Department of Transportation of the State of Delaware, Alexander Slater, III, in his official capacity as Personnel Administrator of the Department of Transportation of the State of Delaware, and the Department of Highways and Transportation of the State of Delaware, Defendants.**

Civ. A. No. 78–369.

United States District Court,
D. Delaware.

March 14, 1979.

Henry duPont Ridgely, of Ridgely & Ridgely, Dover, Del., for plaintiff.

Malcolm S. Cobin, Asst. Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

Richard Knotts ("Knotts") was dismissed from his employment with the Department of Transportation of the State of Delaware ("the Department") in August of 1978. Knotts subsequently brought this action against the Department and against George Jarvis ("Jarvis")[1] and Alexander Slater III ("Slater") in their official capacities as the Secretary and Personnel Director of the Department, respectively. In his complaint, Knotts alleged that the dismissal violated his rights under the Due Process Clause of the Fourteenth Amendment. Knotts seeks a judgment declaring the dismissal null and void and requiring the defendants to expunge the dismissal from his record. Jurisdiction is predicated on Sections 1331(a) and 1343(4) of Title 28 and the doctrine of pendent jurisdiction. This Opinion contains the Court's findings of fact and conclusions of law of a trial on the merits.

## I. BACKGROUND FACTS.

Knotts began working for the predecessor of the Department on March 3, 1958.

On July 1, 1966, the Merit System of Personnel, Chapter 59 of Title 29 of the Delaware Code, governing state classified service employees, came into effect. Under Sections 5930 and 5940 of the Merit System and under the Merit Rules promulgated thereunder, a classified employee who has completed an initial period of probational service (hereinafter "permanent employee") may only be dismissed "for just cause, including but not limited to delinquency, misconduct, inefficiency or inability to perform the work of a position satisfactorily." Merit Rule 14.0600. The Merit Rules provide for notice of the reasons for dismissal within five days after dismissal, Merit Rule 14.-0610, and the employee has thirty days in which to appeal to the State Personnel Commission. 29 Del.C. § 5949(a).

At the time of his dismissal, Knotts was a permanent employee working in the Design Section of the Department as a Highway Engineer Technician III and earning $647.55 every two weeks.

On July 19, 1978, Slater met with Knotts and with the head of the Design Section, Jack Schuh ("Schuh"), to give Knotts a letter of suspension.[2] The letter informed Knotts that he would be dismissed unless he fulfilled the two criteria set out in the

---

1. Richard D. Bewick ("Bewick") was substituted for Jarvis after Jarvis resigned as Secretary and Bewick was appointed Acting Secretary of the Department.

2. You are being suspended without pay from the Department of Transportation effective July 21, 1978, in accordance with Merit Rule 15.0300. This suspension is for conduct which is not in keeping with reasonable standards expected of state employees.

   Specifically, you have been reprimanded both verbally and in writing on a number of occasions with regard to your tardiness and attendance problems. (Merit Rules 15.0716 and 15.0707). There has been no improvement.

   As important, you have indicated to your section head that you do *not* intend to take any action to correct these problems. Your remarks to Mr. Schuh on July 18, 1978, clearly were an act of insubordination. (Merit Rule 15.0704).

   Further, you have made extremely serious charges of improper moral conduct allegedly perpetrated by a number of department em-

ployees. You have also made a number of serious threats to the physical well-being of these employees. This action is in violation of Merit Rule 15.0721 and cannot be tolerated by the department.

   Your suspension will lead directly to your dismissal unless the following criteria is met:

   1. You either prove or refute the allegations of improper moral conduct against department employees and desist from making any further threats against these or any other employees.

   2. You take immediate steps to convey to your section head that you intend to improve your tardiness and attendance problems and subsequently do improve your performance in these areas. Copies of both the Merit System Grievance and Appeal procedure are attached. You have the right to either grieve or appeal directly to the State Personnel Commission under the provisions of these rules.

letter. Attached to the letter was a copy of the Merit System grievance and appeal procedures. After Knotts read the letter, Slater asked him to leave work, but Knotts refused. Two policemen, who were stationed outside the door, escorted Knotts out of the office.

Knotts appealed the suspension, as he was entitled to do under 29 Del.C § 5949(a), to the State Personnel Commission, on July 28, 1978. On August 3, 1978, the Commission acknowledged receipt of the grievance and mailed a copy of its acknowledgement to Jarvis and Bewick, among others. During his suspension, Knotts made no attempt to comply with the criteria set out in the suspension letter, nor did the defendants contact him with respect to his suspension. On August 11, 1978, Jarvis decided to dismiss Knotts, at the recommendation of Slater and Schuh. Slater mailed a termination letter to Knotts, in which he gave Knotts the notice required by Merit Rule 14.0610. It is undisputed that the dismissal was accomplished under color of state law.

Rather than appeal his dismissal to the State Personnel Commission, Knotts commenced the present action.

## II. PROCEDURAL DUE PROCESS.

Knotts claims that the dismissal deprived him of a property interest without due process of law, in violation of the Fourteenth Amendment.[3] The property interest he claims is the expectancy of continued employment with the Department.

Under the Merit System, permanent employees have continuing employment with the State as long as they do not violate any of the Merit Rules and the uncontradicted testimony of Slater establishes that Knotts was such a permanent employee. The Delaware Superior Court has held that permanent employees under the Merit System are entitled to damages or back pay if discharged without cause. *State v. Berenguer*, 321 A.2d 507 (Del.Super.1974). As I said in *Hickey v. New Castle County*, 428

F.Supp. 606, 609 (D.Del.1977), I have no doubt that the Supreme Court of Delaware would approve that construction of the Merit System. Therefore, I conclude that under Delaware law, Knotts had just the sort of expectancy of continued employment that the Supreme Court held to be entitled to due process protection in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The defendants argue, however, that, even assuming Knotts had a property interest within the meaning of the Fourteenth Amendment, he had no procedural due process right to a pre-termination hearing. Moreover, if plaintiff had such a right, defendants maintain that it was satisfied by the July 19, 1978 meeting. Finally, the defendants argue that Knotts' presence at work was disruptive to the point of obviating any requirement of a pre-termination hearing under *Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

This Court, in following *Skehan v. Board of Trustees of Bloomsburg College*, 501 F.2d 31 (3d Cir. 1974), *vacated and remanded on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *on remand*, 538 F.2d 53 (3d Cir. 1976) (en banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976), *on appeal from remand*, 590 F.2d 470 (3d Cir., 1978) has held "that a tenured [public] employee, absent unusual circumstances, is entitled to a pre-termination opportunity to tell his or her side of the story." *Hickey*, *supra*, at 610. Specifically, this Court has noted that *Skehan, supra*, requires the following procedures at the pre-termination stage:

(1) clear notice of the charges being considered, (2) a reasonable time interval to marshall facts and evidence, (3) an explanation of the substance of the evidence supporting the charges, and (4) an opportunity to present his side of the case in a manner which will permit the decision maker to weigh both sides.

---

**3.** Knotts also raised two state law claims in his complaint. He did not pursue those claims, however, in his post-trial briefing, so I do not consider them to be properly before the Court. In any event, I can find no basis in fact or in law for the state law claims.

*Anapol v. University of Delaware*, 412 F.Supp. 675, 679 n. 8 (D.Del.1976).

The defendants argue that *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); and *Town Court Nursing Center, Inc. v. Beal and Califano*, 586 F.2d 266 (3d Cir. 1978), which were issued subsequent to this Court's decision in *Anapol, supra*, require a different view of the law than was expressed in *Anapol*. While this Court rejected a similar argument in the *Hickey* case, given Delaware's interest in its Merit System, I accept the plaintiff's invitation to reconsider the *Anapol* and *Hickey* decisions.

In *Mathews v. Eldridge*, the Supreme Court instructed that the following three factors should be considered in determining what process is due in a particular situation:

> First, the private interest . . . affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* 424 U.S. at 335, 96 S.Ct. at 903.

■ As *Skehan, supra*, points out, an employee being terminated has his livelihood at stake. Once that livelihood is cut off, the employee's ability to pursue a post-termination hearing remedy is greatly disadvantaged. Moreover, after termination of the employment, either the employer or the employee or both may be forced to make alternate employment arrangements which may, as a practical matter, preclude reinstatement, or at least increase the burden on the terminated employee in obtaining reinstatement. 501 F.2d at 38. Furthermore, under Delaware law, the termination gives rise to a presumption in favor of the State which must be overcome by the dis-

charged employee at the post-termination hearing. 29 Del.C. § 5949(b). Thus, while the employee's interest is not as great as that of the welfare recipients in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it is nevertheless substantial.

■ Employee termination situations are likely to involve factual disputes and credibility issues. In such situations, it is important for the employee to have an opportunity to present his or her side of the story in the light most favorable to him or her. Absent such an opportunity, there is a substantial risk that an erroneous termination will result. The Delaware Merit System appeal procedures do not protect against that risk, simply because they do not occur until after the decision to terminate has already transpired. Unlike the procedures found to satisfy due process in *Mathews, supra*, the Merit System procedures do not assure the employee of any input with respect to the termination decision and, accordingly, it may be made on a wholly *ex parte* basis.

I do not understand Knotts to contend that he was entitled to a trial-type pre-termination hearing, but only that he was entitled to a fair opportunity to tell his side of the story to the decision-maker. Allowing such an opportunity would require no more than an informal meeting with the employee after giving the employee reasonable notice of the charges against him and of his chance to be heard. Such a procedure would do much to minimize the risk of erroneous decision-making and would involve minimal expense to the State.

■ On balance, therefore, the requirements outlined in *Anapol, supra*, would substantially decrease the likelihood of erroneous decision-making in an area of critical importance to public employees at relatively little cost to the State. That is what the Third Circuit concluded in *Skehan, supra*, and I conclude that decisions subsequent to *Skehan* do not require a different result.[4]

---

4. I am cognizant of the dictum in *DiLuigi v. Kafkalas*, 584 F.2d 22, 27 n. 7 (3d Cir. 1978), suggesting that *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), holds

Accordingly, I conclude that Knotts was entitled to a pre-termination hearing on reasonable notice.

The July 19, 1978 meeting did not meet the due process requirements as set out in *Anapol, supra*, because Knotts received no advance notice of the meeting or the charges against him.

■ The defendants counter by saying that, even if the July 19, 1978 meeting did not satisfy due process, that meeting and the suspension letter constituted an invitation to Knotts to request a hearing regarding his termination. It is true that the suspension letter asks for a response from plaintiff, but it is hardly an invitation for a *Skehan*-type hearing. The purpose of a *Skehan* hearing is to provide the decision-maker with information concerning whether the employee has done something wrong and, if so, whether it warrants termination. The suspension letter did not provide Knotts with an opportunity to show that he was not guilty as charged, or that, even if he was, he should not be dismissed. Rather, the suspension letter only invited Knotts to avoid discharge by admitting he was guilty and promising that he would do better in the future.[5]

■ Finally, the defendants argue that Knotts was a disruptive influence on the Department, obviating the need for a pre-termination hearing under *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). That argument, however, ignores the fact that once Knotts was suspended on July 19, 1978, he was away from the workplace and thus could cause no disruption. Both Slater and Schuh testified that they would have met with Knotts after his suspension if he had asked for a conference, so it cannot be said that there was reason to fear that a conference would have posed a

threat to anyone at the workplace. The disruption not being present, "the necessary notice and rudimentary hearing should" have been afforded to Knotts. *Goss v. Lopez, supra*, at 582, 95 S.Ct. at 740.

## III. REMEDY.

■ Plaintiff seeks reinstatement, backpay and an injunction expunging the discharge from his record and restraining the defendants from further violation of rights under the Due Process Clause.

In *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court enunciated a test of causation designed to distinguish between a result caused by a constitutional violation and one not so caused. *Id.* at 274, 285–6, 97 S.Ct. 568. The petitioner in that case alleged that the board impermissibly failed to renew his contract because he had exercised his right to free speech. The District Court found that petitioner's conduct was protected by the First Amendment and that his conduct was a "substantial factor" in the Board's decision not to rehire him. It awarded petitioner reinstatement and backpay. The Supreme Court vacated the Court of Appeal's affirmance of the District Court opinion and remanded the case, holding that once the petitioner carried his burden of proving that his constitutionally protected conduct was a "substantial factor" in the Board's decision not to rehire him, "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's re-employment even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576.

Subsequently, in a case involving the denial of procedural due process to public

---

that a pre-termination hearing is unnecessary in a public employee discharge case. As explained in *Hickey, supra*, I do not read the *Arnett* case as so holding.

5. This is not a case, such as *Behan v. City of Dover*, 419 F.Supp. 562 (D.Del.1976), in which the plaintiff admitted the charges against him. Knotts testified that he told Slater and Schuh

at the July 19, 1978 meeting that he did not agree with the accusations in the suspension letter. If the defendants did not understand him to disagree at the time of the meeting, they certainly understood that he disagreed when they received notice of his appeal from the suspension.

school students, the Supreme Court agreed with the Court of Appeals' conclusion that if the students:

"would have been suspended even if a proper hearing had been held," 545 F.2d, at 32, then [the students would] not be entitled to recover damages to compensate them for injuries caused by the suspensions. . . . [I]n such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. (citations omitted)

*Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The Court held that, absent proof of actual damages, the appropriate remedy to redress a denial of procedural due process is nominal damages. *Id.* at 267, 98 S.Ct. 1042.

Similarly, this Court has concluded that a public employee dismissed without a pre-termination hearing is not entitled to the extraordinary remedy of reinstatement if the defendants prove by a preponderance of the evidence that a procedure consistent with due process would have also resulted in dismissal. *Waters v. City of Wilmington*, C.A. No. 78–259 (D.Del., June 27, 1978), aff'd., 591 F.2d 1338 (3d Cir. January 23, 1979).

The suspension and termination letters state the conduct for which Knotts was dismissed: (1) his "tardiness and attendance problems"; (2) his "insubordination" (namely, calling Schuh a "common son-of-a-bitch" on July 18, 1978, and informing him that he had no intention of improving his attendance); (3) his charges of immoral conduct against fellow employees and supervisors (namely, accusing them of having sexual intercourse with his former wife); (4) his "threats to the physical well-being of these employees"; and (5) his failure during his suspension to express an intention to improve attendance and to either prove or withdraw the charges of immoral conduct. Based on the trial record, it is apparent that an impartial decision-maker, after a hearing held with proper notice, would have concluded that each of these charges was true and that the Department had no choice but to terminate plaintiff's employment.

The documentary record demonstrates not only that Knotts had an extremely poor record with respect to attendance and punctuality, but also that he had been warned many times, both orally and in writing, that a failure to improve his attendance would have serious consequences. Indeed, Knotts does not dispute that this problem existed. Likewise, I am persuaded that Knotts told Schuh on July 18, 1978, that his tardiness problem would continue until his "infection" cleared up, and that Knotts, when questioned about the underlying reason for this problem, told Schuh this was "none of his goddamn business." I also find that he did use the language alleged in addressing his section head on this occasion.

While Knotts denies accusing his superiors of having sexual intercourse with his former wife, the evidence convinces me that he did so accuse them on a number of occasions. Moreover, I believe there was at least one occasion when Knotts made statements which could fairly be construed as a threat.

Finally, it is clear that when the termination decision was made on August 11, 1978, there was no reason to believe Knotts' conduct would improve in the future. During the three weeks since the July 19th letter request for some indication that Knotts would try to come to grips with his problems, nothing had been heard from him.

By August of 1978, not only had Knotts' conduct and attitude made him impossible to supervise, but his disregard of Department rules and his treatment of his fellow employees had also brought threats of a work stoppage from those employed in his section. No employer can afford this kind of disruption of the work effort. Given plaintiff's failure to give hope for the future, I am confident that the termination decision would have occurred if due process had been afforded. Accordingly, Knotts will receive only nominal damages of one dollar, in lieu of backpay and reinstatement. Because Knotts' dismissal will be allowed to stand, its expungement from the record would be inappropriate. Likewise, because there will be no reinstatement, an injunc-

tion against further violation of plaintiff's due process rights is unnecessary.

### IV. CONCLUSION.

As a permanent employee under the Delaware Merit System for classified employees, Knotts had a property interest in his continued employment entitled to due process protection. Before termination of that property interest, Knotts was entitled to notice of the charges against him and a fair opportunity to present his side of the story to the decision-maker. Not having afforded Knotts such an opportunity before terminating his employment, the defendants deprived him of his property interest without due process of law. Only nominal damages will be awarded, however, because it is clear from the record that Knotts' employment would have been terminated even if the requirements of due process had been fulfilled.