**Robert RINGER, Plaintiff,**

v.

**Mathais FALLIS, Donald McArdle and Thomas LoFaro, Defendants.**

Civ. A. No. 92–485–JJF.

United States District Court, D. Delaware.

March 31, 1994.

Robert Ringer, pro se.

Marsha Kramarck, and Mark H. Conner, Deputy Attys. Gen., Dept. of Justice, Wilmington, DE, for defendants.

## MEMORANDUM OPINION

FARNAN, District Judge.

### I. INTRODUCTION

Presently before the Court is a Motion for Summary Judgment filed by Defendants. (D.I. 75) Robert Ringer ("Ringer"), a *pro se* Plaintiff, commenced this civil rights action on August 18, 1992. (D.I. 1) Ringer filed the Complaint pursuant to 42 U.S.C. § 1983 against four Defendants: Mathias Fallis, the former Director of the State Personnel Office ("Fallis"); Donald McArdle, the Pension Administrator for the State Pension Office ("McArdle"); Thomas LoFaro, the Deputy Director for Labor Relations for the State Personnel Office ("LoFaro"); and the State of Delaware. (D.I. 1)

Before recusing himself from the case, the Honorable Joseph J. Longobardi partially ruled on the instant Motion for Summary Judgment. Judge Longobardi granted Defendants' Motion for Summary Judgment with respect to the State of Delaware and with respect to the liability of Fallis, McArdle, and LoFaro in their official capacities. (D.I. 106) Judge Longobardi, however, reserved for separate opinion the determination of whether the Motion for Summary Judgment should be granted on the basis of qualified immunity. That issue is presently before the Court.

For the reasons discussed below, the Court concludes that Defendants' Motion for Summary Judgment will be granted in part and denied in part.

### II. FACTUAL BACKGROUND

Ringer was employed as an internal auditor by the Pension Office for the Department of Personnel, State of Delaware for approximately eleven years. (D.I. 1; D.I. 77, Ex. I)

On August 27, 1990, Mathias Fallis, the State Personnel Director, notified Ringer that he was being considered for termination from employment pursuant to Merit Rule 14.0600. (D.I. 77, Ex. E) Ringer was charged with disseminating a letter, which was allegedly racist in content, to State employees through the State mail system on at least seventy occasions. (D.I. 77, Ex. D) The letter contained the following:

The rights of Whites are slowly being eroded.

The House is about to enact a Bill that would increase immigration, many of them Jamicians [sic] and Hatians [sic] and other unskilled workers.

There are two Bills in congress which will give Puerto Rico Statehood in 1991. Blacks are 12% of the population and commit over 50% of the crimes. The Hispanic crime rate is worse than the Black rate. Dont [sic] you think the citizens of the U.S. should decide statehood and not the Puerto Ricans?

The Civil Rights Act of 1990 has been passed by the House (Carper voted for it) and the Senate (Biden is a co-sponsor.) It will mandate minority hiring quotas although they will lie and say it does not. But what is good for Blacks is generally bad for Whites. Just look at Affirmative Action. The President has threatened to veto the Bill but may not.

The most important action you can take is to write today to the President and your Congressman.

Don't let these gutless politicians put you in the back of the bus.

(D.I. 77, Ex. A)

Detective A. Daniel West ("West") of the Capitol Police conducted an investigation of Ringer's use of the State mail system.[1] (D.I. 77, Ex. C) During the course of the investigation, Donald McArdle, the Pension Administrator for the State Pension Office, contacted West. McArdle informed West that he had "marked" several envelopes located in

---

1. A copy of the investigative report is contained in the Appendix to Defendants' Motion for Summary Judgment. (D.I. 77, Ex. C)

Ringer's office by inserting white paper hole reinforcements into the envelopes. (D.I. 77, Ex. C) Subsequently, an envelope addressed to a State employee revealed that it was one of Ringer's envelopes that McArdle had "marked." (D.I. 77, Ex. C) Thereafter, West marked five other envelopes located on the floor under Ringer's desk, four of which Ringer later mailed. (D.I. 77, Ex. C) Ringer alleges in his Complaint that Defendants' actions constituted an illegal search of Ringer's enclosed work office, while Defendants contend that they did not search Ringer's office or seize any materials from the office. (D.I. 1; D.I. 76)

A Delaware State Police handwriting expert found that the handwriting on the envelopes dispatched to State employees was identical to the handwriting on documents known to have been written by Ringer. (D.I. 77, Ex. C)

The investigative report also stated that Ringer altered the envelopes to conceal the origin of the transmission by obliterating the name of the last addressee. (D.I. 77, Ex. C)

A pretermination hearing was held on September 13, 1990, at which Ringer was represented by counsel. (D.I. 77, Ex. D) Ringer claims in his Complaint that the pretermination hearing violated his procedural due process rights because Thomas LoFaro, who conducted the hearing, was not an impartial decision maker because LoFaro acted as both investigator and adjudicator. (D.I. 1) In addition, Ringer alleges that the hearing violated title 29, section 5906 of the Delaware Code because "[o]ne of the board members could not articulate his thoughts and was so mixed up [that] another member had to speak for him." (D.I. 1)

After the pretermination hearing, LoFaro notified Ringer by letter that he was recommending Ringer's dismissal to Fallis. (D.I. 77, Ex. D) In the letter, LoFaro stated:

> Your Department, the State Personnel Office, is responsible for advocating and assuring Equal Employment Opportunity and Affirmative Action for minorities on behalf of the State of Delaware as an employer. Your actions had the effect of promoting and exacerbating racial tensions, which is unconscionable in any employment setting, the more so here given our mission. As such, they were detrimental to and incompatible with the accomplishment of that mission. Separately, the widespread use of the State mail system to disseminate a non-work related message is a very serious misuse of the State mail. As I stated at the hearing, either the content of the letter or sending it through the State mail system to employees, standing alone, is of sufficient gravity to warrant dismissal.

(D.I. 77, Ex. D)[2]

On September 19, 1990, Fallis sent a letter to Ringer advising Ringer that he was terminated from employment. (D.I. 77, Ex. E) In the letter, Fallis stated that based upon the entire record, "I find the unacceptable conduct of promoting racial disharmony through a gross misuse of the State mail system to warrant your termination from employment." (D.I. 77, Ex. E) In his Complaint, Ringer claims that his termination from employment violated his first amendment rights and his substantive due process rights. (D.I. 1)

In the September 19, 1990 letter, Fallis also informed Ringer that he had a right to appeal the termination to the State Personnel Commission in accordance with Merit Rule 21.0112. (D.I. 77, Ex. E) Rather than file an appeal with the State Personnel Commission, Ringer elected to file a grievance, which McArdle denied on October 22, 1990. (D.I. 77, Ex. F) Ringer appealed this denial, but because Ringer failed to appeal from Step 2 to Step 3 of the grievance procedure in a timely manner, Fallis notified Ringer that his appeal was rejected as untimely. (D.I. 77, Ex. G) Ringer then appealed this decision to the State Personnel Commission,

---

2. Ringer alleges in his Complaint, however, that state employees' personal use of the State mail system is widespread. (D.I. 1) Ringer asserts, "[t]he system is used by virtually everyone because no one knows it is frowned upon. The use of the internal system for personal use, was and is an accepted prACTICE [sic]. This system was used by more than one of D[efendants] to send & receive mail." (D.I. 1) Thus, Ringer contends that Defendants' suggestion that misuse of the State mail system was the grounds for Ringer's discharge is "ludicrous." (D.I. 1)

and on June 12, 1991, a hearing was held. (D.I. 77, Ex. G) The Commission upheld the determinations of Fallis and McArdle and dismissed the grievance for untimeliness. (D.I. 77, Ex. G) Ringer claims that the grievance procedure violated state law and his procedural due process rights because the procedure was just a formality and did not satisfy the purpose of the procedure. (D.I. 1)

Ringer filed another appeal with the State Personnel Commission regarding the rejection of three applications for employment from the State of Delaware. (D.I. 77, Exs. K, N, O, P) The State Personnel Commission conducted a hearing and determined that his applications were properly rejected pursuant to Merit Rule 7.0400. (D.I. 77, Ex. K) Ringer claims that from September 15, 1990 to February 28, 1992, State personnel sent unsolicited notices to other State and non-State agencies, which stated, "Applicant is not recommended for rehire." [3] (D.I. 1) Ringer contends that Defendants' act of sending these letters violated his substantive due process rights because the letters damaged his reputation, resulting in a deprivation of his liberty interest. (D.I. 1) In this regard, Ringer alleges that "[a]n employer who fires an employee for reasons that if disclosed would be defamatory is guilty of defamation." (D.I. 1)

**3.** Ringer also claims that "letters were being sent out before I was terminated to prevent me from being considered for State jobs. Before I could appeal to a higher authority I was blacklisted for consideration for other State jobs." (D.I. 1)

In addition, Ringer asserts that one of the 1990 letters contained critical comments about Ringer, "a most unusual procedure." (D.I. 1)

**4.** Ringer's Complaint alleges four violations of the Constitution of the State of Delaware: (1) Article I, section 5 (Freedom of press; evidence in libel prosecutions; jury questions); (2) Article I, section 6 (Searches and seizures); (3) Article I, section 7 (Procedural rights in criminal prosecutions; jury trial; self incrimination; deprivation of life, liberty or property); and (4) Article I, section 9 (Courts shall be open; remedy for injury; venue; suits against State). (D.I. 1)

Ringer's Complaint also asserts violations of (1) title 7, section 1211 of the Delaware Code (section does not exist); (2) title 29, section

## III. PROCEDURAL HISTORY

 On August 18, 1992, Ringer filed a Complaint, in which he alleges various violations of the United States Constitution, the Constitution of the State of Delaware, and other laws of the State of Delaware.[4] (D.I. 1) Ringer asserts that his civil rights have been violated in the following ways: (1) Defendants' termination of Ringer from employment violated Ringer's First and Fourteenth Amendment rights; (2) Defendants' termination of Ringer from employment contravened Ringer's Fourteenth Amendment substantive due process rights; (3) Defendants' search of Ringer's office violated the Fourth and Fourteenth Amendments; (4) Ringer's pretermination hearing violated Ringer's Fourteenth Amendment procedural due process rights and title 29, section 5906 of the Delaware Code; (5) the grievance procedure contravened his Fourteenth Amendment procedural due process rights and state law; and (6) Defendants' act of sending unsolicited letters to State and non-State agencies stating that "Applicant is not recommended for rehire" violated Ringer's Fourteenth Amendment substantive due process rights because the letters damaged his reputation, resulting in the deprivation of his liberty interest. (D.I. 1) Ringer's prayer for relief demands judgment and seeks reinstatement, compensatory and punitive damages, costs, interest and attorneys' fees. (D.I. 1)

5806(a) of the Delaware Code (Code of Conduct); (3) title 29, section 5910 of the Delaware Code (Director of Personnel); and (4) title 29, section 5906 of the Delaware Code (State Personnel Commission; composition; appointment; term; vacancies; qualifications; removal). (D.I. 1)

The Court notes that Section 1983 liability arises solely from violations of *federal* statutory law or constitutional rights under color of state law. *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1375 (3d Cir.1992) (emphasis added), *cert. denied*, — U.S. —, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). "Section 1983 does not provide a cause of action for violations of state statutes, and, ... a state statute cannot, in and of itself, create a constitutional right." *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). Therefore, the state claims asserted by Ringer are cognizable under Section 1983 only if the federal constitutional right is expansive enough to encompass the state right. *See id.*

On September 10, 1992, Defendants filed an Answer to the Complaint. (D.I. 2) In the Answer, Defendants raise several Affirmative Defenses, one of which states that Defendants are entitled to "qualified immunity." (D.I. 2)

## IV. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

■■■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party comes forward and identifies "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 549 (3d Cir.1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 325, 106 S.Ct. 2548, 2552, 2554, 91 L.Ed.2d 265 (1986)). Considering the facts in the light most favorable to the non-moving party, the court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

### B. QUALIFIED IMMUNITY

■■■ Government officials performing discretionary functions generally are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitz-

gerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Abdul–Akbar v. Watson, 4 F.3d 195, 201–02 (3d Cir.1993). The right plaintiff alleges the official to have violated must have been "clearly established" in a "particularized" sense. Abdul–Akbar, 4 F.3d at 202 (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "Clearly established rights" are those rights with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. Creighton, 483 U.S. at 640, 107 S.Ct. at 3039.

A court must begin its qualified immunity analysis with the determination of whether the plaintiff has alleged a violation of a clearly established constitutional right. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The court then must decide whether, at the time of the violation, the "right" was "clearly established" and whether a reasonable person would have believed his or her conduct violated that right. Atiyeh v. Hairston, No. CIV. A. 92–3368, 1993 WL 532976, at *4 (E.D.Pa. Dec. 22, 1993) (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

■■■ The burden of establishing qualified immunity is on the defendant official. Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir.1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990); Hynson v. City of Chester, 827 F.2d 932, 935 (3d Cir.1987) (official claiming qualified immunity has the burden of pleading and proof), cert. denied, 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988).[5] In considering whether Defendants have met their burden of establishing qualified immunity for the various claims asserted by Ringer, the Court has thoroughly considered the Opening Brief of the State Defendants in Support of the Motion for Summary Judgment, the Appendix filed with Defendants' Opening Brief, and the arguments presented by Counsel at the September 9, 1993 hearing. (D.I. 76; D.I. 77; D.I. 134)

---

5. The United States Court of Appeals for the Third Circuit has stated that if a defendant official fails to meet his burden of establishing qualified immunity, he may still escape liability if the plaintiff fails to meet his burden at trial. Ryan v. Burlington County, 860 F.2d 1199, 1204 n. 9 (3d Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989).

■ The Court initially concludes that Defendants have failed to meet their burden of establishing qualified immunity with respect to Ringer's claims that (1) Defendants' termination of Ringer from employment violated the First and Fourteenth Amendments; (2) the grievance procedure violated his Fourteenth Amendment procedural due process rights and state law; (3) Defendants' search of Ringer's office contravened the Fourth and Fourteenth Amendments; and (4) Defendants' act of sending unsolicited letters to State and non-State agencies stating that "Applicant is not recommended for rehire" violated his substantive due process rights.

Defendants' Brief fails to address the first two claims stated above. With regard to the third claim, although the Statement of Facts in Defendants' Brief does contain the statement "[n]o materials were seized from Ringer's office, nor were the premises searched," the Defendants do not advance any argument in the Brief regarding Ringer's claim based on the Fourth Amendment. With respect to the fourth claim, Defendants' Brief advances the argument that, following the termination, Ringer's rejection from employment with three State agencies was proper pursuant to Merit Rules 7.0400 and 7.0410. However, Defendants fail to address Ringer's allegation that Defendants violated Ringer's substantive due process rights by sending unsolicited letters to State and non-State agencies. Furthermore, the Appendix fails to contain any evidence that could be construed to support an argument of qualified immunity based on these four specified claims. (D.I. 77) Therefore, the Court will deny Defendants' Motion for Summary Judgment with regard to these four claims.[6] Next, the Court will consider Ringer's two remaining claims.

## C. PLAINTIFFS' CLAIMS

### 1. The Pretermination Hearing Violated Ringer's Procedural Due Process Rights

Ringer claims that his September 13, 1990 pretermination hearing violated his Four-

teenth Amendment procedural due process rights because LoFaro, who conducted the hearing, was not an impartial decision maker because he acted as both investigator and adjudicator. (D.I. 1)

The Court first must determine whether Ringer has alleged a violation of a clearly established constitutional right. The Third Circuit has stated that "it is well-settled that 'due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.'" *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 137 (3d Cir.1986) (quoting *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1669–70, 72 L.Ed.2d 1 (1982)). Thus, the Court finds that Ringer has met his initial burden.

The Court next must determine whether, at the time of the violation, the "right" was "clearly established" and whether a reasonable person would have believed his or her conduct violated that right. The Court concludes that the procedural due process right to an impartial decision maker was clearly established in 1990, the year of the pretermination hearing. Further, the Court finds that Defendant LoFaro would not have believed nor did he violate any of Ringer's procedural due process rights and has met his burden of establishing qualified immunity. LoFaro has submitted an Affidavit in support of the summary judgment motion. (D.I. 77, Ex. M) LoFaro's Affidavit states that he was the Hearing Officer at Ringer's pretermination hearing, but that he did not undertake any investigatory duties in connection with Ringer's termination from employment. (D.I. 77, Ex. M)

■ Because Defendants have met their burden in the context of a summary judgment motion, the burden shifts to Ringer to make a showing sufficient to establish the existence of the elements essential to the procedural due process claim. However, the

**6.** The Court concludes that there are genuine issues of material fact that exist with respect to these four claims, and on this basis, Defendants'

Motion for Summary Judgment will also be denied.

Court concludes, even considering the facts in the light most favorable to Ringer, Ringer has failed to meet this burden. Ringer's response to Defendants' Motion for Summary Judgment merely repeats the allegations in his Complaint and sets forth general legal conclusions. (D.I. 82) The Court concludes that there is no genuine issue as to any material fact with regard to the applicability of the qualified immunity defense to Ringer's procedural due process claim.[7] Thus, the Court will grant Defendants' Motion for Summary Judgment with respect to this claim.

### 2. Ringer's Termination From Employment Violated Ringer's Substantive Due Process Rights

■ Ringer also alleges that his termination from employment deprived him of his property interest in state employment in violation of his Fourteenth Amendment substantive due process rights. (D.I. 1) The Court concludes that Ringer has not met his initial burden of alleging a violation of a clearly established constitutional right. The Third Circuit has stated that a property interest in state employment exists where an employee has a legitimate claim of entitlement to such employment under state law, policy or custom. *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 401 (3d Cir.1992); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Under the Merit System in the State of Delaware, permanent employees have a right to continuing employment with the State as long as they do not violate any of the Merit Rules. Del.Code Ann. tit. 29, § 5930 (1991); *Knotts v. Bewick*, 467 F.Supp. 931, 934 (D.Del.1979); *Hickey v. New Castle County*, 428 F.Supp. 606, 609 (D.Del.1977). Ringer, however, was terminated from his position pursuant to Merit Rule 14.0600. Merit Rule 14.0600 provides that "[a]n appointing authority may dismiss any incumbent *for just cause*, including but not limited to, delinquency, misconduct, inefficiency, inability to perform satisfactorily the work of the position or for any disciplinary reason authorized by 15.0200." Merit Rule 14.0600 (emphasis added). In Ringer's termination letter, Fallis informed him that based upon the entire record, "I find the unacceptable conduct of promoting racial disharmony through a gross misuse of the State mail system to warrant your termination from employment." (D.I. 77, Ex. E) Because Ringer was found to have violated Merit Rule 14.0600, he does not have a legitimate claim of entitlement to employment under Delaware law. *See Sanguigni*, 968 F.2d at 401. Therefore, he no longer can claim a substantive due process

---

7. In addition, Ringer claims that the pretermination hearing violated title 29, section 5906 of the Delaware Code because "[o]ne of the board members could not articulate his thoughts and was so mixed up [that] another member had to speak for him." (D.I. 1) However, as stated in footnote 4, state law claims are cognizable under Section 1983 only if the federal constitutional right is expansive enough to encompass the state rights. *See Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir.1990), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). Thus, the Court will briefly review the requirements of the constitutional right at issue.

The United States Supreme Court discussed the requirements for a pretermination hearing in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 193–94 (3d Cir.1993). The Third Circuit, in discussing *Loudermill*, recently stated:

[T]he Supreme Court held that a public employee with a property interest in his job is entitled to "some kind of a hearing," a "pretermination opportunity to respond, coupled with post-termination administrative procedures." The hearing need not be elaborate, but the employee is entitled to notice of the charges, an explanation of the employer's evidence, and an opportunity to explain. The notice may be served at the time of the pretermination hearing and it may be oral.

*Edmundson*, 4 F.3d at 193 (quoting *Loudermill*, 470 U.S. at 542, 547–48, 105 S.Ct. at 1493, 1496) (citations omitted).

The Court finds that Ringer's pretermination hearing comported with the *Loudermill* requirements for a pretermination hearing. The Court also notes that Ringer's pretermination hearing complied with the applicable State of Delaware's Merit Rules establishing standards for pretermination hearings. Merit Rules 14.0610, 14.0620. Therefore, the Court concludes that there is no genuine issue as to any material fact with regard to the applicability of the qualified immunity defense to Ringer's claims under state law.

right in continued employment with the State of Delaware.[8]

The Court concludes that there is no genuine issue as to any material fact with respect to the applicability of the qualified immunity defense to Ringer's substantive due process claim. Thus, the Court will grant Defendants' Motion for Summary Judgment with respect to this claim.

## V. *CONCLUSION*

The Court concludes that Defendants' Motion for Summary Judgment will be granted in part and denied in part. First, the Court concludes that Defendants have failed to meet their burden of establishing qualified immunity with respect to Ringer's claims that (1) Defendants' termination of Ringer from employment violated the First and Fourteenth Amendments; (2) the grievance procedure violated his Fourteenth Amendment procedural due process rights and state law; (3) Defendants' search of Ringer's office contravened the Fourth and Fourteenth Amendments; and (4) Defendants' act of sending unsolicited letters to State and non-State agencies stating that "Applicant is not recommended for rehire" violated his substantive due process rights. The Court, therefore, concludes that Defendants' Motion for Summary Judgment will be denied with regard to these four claims.

Second, the Court concludes that there is no genuine issue as to any material fact with respect to the applicability of the qualified immunity defense to Ringer's claims that (1) his pretermination hearing violated his Fourteenth Amendment procedural due process rights; and (2) his termination from employment deprived him of his property interest in state employment in violation of his Fourteenth Amendment substantive due process rights. Thus, the Court will grant Defen-

dants' Motion for Summary Judgment with respect to these two claims.

An appropriate Order will be entered.

---

8. The Court also notes that in the context of the summary judgment motion, Ringer, as the non-movant, has failed to meet his burden of presenting evidence sufficient to establish the existence of the elements essential to a substantive due process claim in continued employment.

Ringer does allege in his Complaint that because state employees' personal use of the mail

system is widespread, Defendants' suggestion that misuse of the State mail system was grounds for Ringer's discharge is "ludicrous." (D.I. 1) However, this allegation is not sufficient to establish the elements of the substantive due process claim. Therefore, the Court concludes that Defendants are entitled to judgment as a matter of law.